H.D. Insurance v. Smith. Good morning, Your Honors. Rachel Lerman of Barnes and Thornburg for Appellant and Defendant H.D. Smith. We're here because we'd like to ask this Court to reverse the District Court's decision and enter judgment for H.D. Smith. The reason for this, as spelled out in our briefs, is because, as a matter of law, Cincinnati has a duty to defend H.D. Smith. Under settled law in this circuit and in Illinois, one determines the duty to defend by looking at the allegations made in the underlying complaint and at the policy language. And as we've explained, the policy language here is very broad. It not only covers injury, it covers damages because of bodily injury, it covers damages that are claimed by any person or organization for the care, loss of service, or death arising from such injury. So does your rule that you want us to adopt actually put insurance companies on the hook for all sorts of lawsuits that are only tangentially tied to some bodily injury? Well, we don't think it's tangential. We think that the State here is clearly asking for damages to repay it for what it's spent taking care of its citizens who've been bodily injured. And the complaint says that over and over again, in particular if you look at paragraph 57. I understand that the allegation is simply that the manufacturers of drugs made it available to people for prescription purposes. Well, we're the distributors, actually. But that the prescriber, the doctors, are not involved at all for this suit. Not in this lawsuit. And so that the manufacturers of the drugs are guaranteeing that the user of the drug will not abuse it. Well, the distributors are alleged to have been negligent in monitoring. Well, essentially that's what they said. They're guaranteeing, according to the suit, that the users and the purchasers will not abuse the drug. And if they do, it is the duty of the insurance company to defend them. Well, the State is saying that... No, I'm saying, is that what you conceived the lawsuit to be? Well, the lawsuit alleges many things in this case. It's a very lengthy complaint, and it alleges many things.  It's the people that are being attacked are the ones that delivered prescription drugs to the market so that doctors could prescribe the drugs. And they are now being tapped by the State with making available to the patients prescription drugs that they abused. Those are among the allegations, yeah. Okay, I got that part right anyway. I'm not here to comment on that. So here's the... Because the policy covers occurrences which are accidents. So what is the accident alleged in the West Virginia lawsuit? Well, as you know, the district court found that there was an occurrence, and the other side has not made any argument about that. So we would advise that it's waived, but I'm prepared to answer it. We do have a footnote in our brief. The accident involves, you know, there's many, many allegations of negligence, that we not purposefully sent too many drugs to the State so that people would become addicted, but that we negligently oversaw how many drugs were going to the State, and by doing so led to this occurrence of bodily injury. We're also alleged to have intentionally done so. But what's important here, when we're looking at the insurance policy, is all the allegations of negligence. There's even a count of negligence, which is where the paragraph I just read you came from. Yeah, you're charged with being negligent by delivering way too many drugs than was appropriate, given the situation in West Virginia. And then the State had to spend a great deal of money taking care of people in its State who became addicted, including people who didn't have the money to pay for their own care. And these people that the State had to take care of, the reason they had to take care of them is because they had bodily injury. That's correct. That's your position. That's correct. And so, therefore, the suit is because of bodily injury, and therefore there's a duty to defend. That's your position. There's a duty to defend because of the because of language, and also because of the language that says bodily injury includes damages claimed by any person or organization for care, loss of services, or death arising from such injury. And the State of West Virginia is seeking damages for taking care of those people. Is there an alternative ground or an enhanced ground to that? Well, I submit that I think because of would probably get us there, but the language that I've just quoted absolutely gets us there. That's the sort of language that was missing from cases like Diamond State. We are certainly looking at damages claimed by any person or organization for care, loss of services, or death, and care and death are spelled out all over this complaint. And as you know, if there's any question at all about the reading the allegations or the policy, the court is supposed to favor the insured and read any ambiguities in favor of the insured. We think that the court here, the district court here, got off on the wrong track in part because of the earlier cases in Ritchie and Anda. I think Ritchie was the Kentucky case that came first and was never appealed, and the court there decided that this was an economic loss case because the court was acting in the state is acting in a regulatory capacity and followed that. It's on appeal to the 11th Circuit, and then the court here followed it without really looking at the cases. What does it mean, economic loss? What does that mean? Well, we don't think economic loss has anything to do with this case. Economic loss in Illinois is a theory that was developed to determine whether you're looking at a tort or a contract cause of action, usually in the product liability context. And insurance, it's been borrowed to distinguish between cases where your CGL policy would cover you for tort types of action versus contract types of action. So if you have a product and it's defective, you don't get insurance coverage for that. If your product injures the property of others or the bodies of others, that's exactly why you buy CGL policies, so that at the very least, the insurance company will offer you a defense. So we're not sure. The district court didn't explain how economic loss comes into play here, nor did Cincinnati. So I'm hard put to see what the basis of that theory was. The court also cited Medmark, which is a well-known case in the circuit, and we think that the Medmark case helps us and doesn't hurt us. In Medmark, you did have an economic loss sort of situation, because there there were baby bottles that apparently had been made with some sort of dangerous chemical. But the people in that case weren't claiming that anyone was hurt by that chemical or that anyone even used the baby bottles. They just wanted the money back for having bought these baby bottles that shouldn't have been put on the market. Our case is completely different. People did use the drugs. People did get hurt. People did get addicted. People did die. And another distinction that Medmark, it was a because of policy, but it didn't have this additional language that we think takes us easily over the finish line. Medmark also made clear that one of the tests you can use is, well, is the plaintiff below? Are they going to have to prove up? What are they going to have to prove up? Do they have to prove up bodily injury? And here we think it's clear that they're going to have to prove that people were injured and that they put excessive costs into caring for these people, more than they would have had to put for the negligent conduct of parties like H.G. Smith. I'm going to save my time for rebuttal unless you have further questions. All right, Ms. Lerman. Okay. Thank you. Mr. Reed. Good morning, Your Honors. May it please the Court. My name is Brian Reed. I am arguing for the Plaintiff Appellee Cincinnati Insurance Company. And I think Your Honor's questions lead right to the point of the matter. This is a duty to defend case. We are governed by the allegations in the underlying complaint. And more importantly, however, and something that we didn't discuss yet today, we have also here in effect. You have a low, well-modulated voice. I have a poor ear. My apologies, Your Honor. I'll try and speak. The center one is the mic, so pull that more towards you. The other two are recording. And speak up. Okay. Is that better, Your Honor? Hey, you can pull it closer to your mouth, too, you know. Thank you. My apologies. Another factor, I think, that... Well, before you go there, I want to clarify, make sure I'm clear on what you view as an occurrence or whether, I mean, you haven't argued that there wasn't an occurrence, right? We did argue that in the underlying. Well, wasn't that waived? And we don't argue it on appeal, Your Honor. The sole issue on appeal is whether the complaints brought by the State of West Virginia seek damages because of or arising out of bodily injury. Okay. Oh, and then if a citizen is injured because of drug abuse and West Virginia spends money to treat that person, why isn't it obvious that West Virginia has spent money because of that person's injury? And that could be the case, Your Honor. But the issue here is, in fact, what is the State seeking? And as the record is replete with comments by the State itself, not only in the complaint but, importantly, in the briefs that we cited, too, during the course of a remand action. The pharmaceutical companies in the underlying case have alleged that very same thing. They said we shouldn't be strategically. They don't want to be in Boone County, West Virginia. They sought to remove the case to the Federal District Court in West Virginia, getting out of plaintiff's backyard. What do you think your policy insures your clients from? Damages because of bodily injury or damages because of property damage, which isn't at issue. If the underlying complaint seeks damages for bodily injury, then there's a duty to defend. But what we have here is the State, in fact, and a ruling from the court in that remand action saying, no, no, no, that's not what we seek. In fact, the State itself asserted in its brief, there are no monetary damages sought in this action based on damages suffered by individual West Virginia citizens. But the policy does cover damages for care resulting from bodily injury. And that's, Your Honor, that goes to the insuring agreement. And I'm glad you brought that up because that is not an extension of coverage. And it's in the record at, I'll point you to the correct page, at Appendix 102 and 103. The counsel pointed to subpart E of the insuring agreement, which states damages because of bodily injury includes damages claimed by a person or organization for care, loss of services, death resulting at any time from the bodily injury. So there has to be bodily injury first. That's not an expansion of coverage in response to Your Honor's question. There has to be bodily injury. If there is bodily injury, then damages because of bodily injury can include damages sought by a person or organization, in this case the State. Do you have some authority for the proposition that damages sought on West Virginia's own behalf can't be because of the bodily injury of others or the care? No, and that's actually, Your Honor, that's not our argument. Our argument is what are they seeking? And they specifically stated it. In order to escape and in order to get back down to Boone County, they stated in their remand brief and the court there ruled specifically that this is not an action brought on behalf of damages relating to the West Virginia residents because they were trying to make a numerosity, mass action, class action argument. This is in fact only, and in the State's own words, seeking economic loss and economic damages suffered by the State in the form of increased costs for hospitals, law enforcement, the judicial system, and things of that nature. Well, wait, if a citizen, let me just ask this one. If a citizen is injured because of drug abuse and sues for his own injuries, that suit would be covered, right? Dependent upon the nature of the complaint, but that does sound like it would allege bodily injury. What if his mother spent money to care for his injuries, say she paid out of pocket for medical care and then brought her own suit to recover that money, would that suit be recovered? Would that suit be covered? If she's seeking, yes. Damages for bodily injury, yes. So why do you think the answer is different if the payer is West Virginia instead of the mother? Because of what the State is actually seeking. The State could have. It could have asked for damages and costs relating to individual injuries to its citizens, but it specifically said it did not. And it did so in order to avoid the removal and to get back to Boone County. This case arises out of, and as Your Honor inquired, this industry is heavily regulated. The supply of prescription drugs, controlled substances to the State of West Virginia. The crux of the State of West Virginia lawsuit is that they claim that there are regulations in place that require the pharmaceutical companies to monitor its supply and demand, and that the pharmaceutical companies should have known that they were supplying far too many drugs to the State of West Virginia, and that in doing so, that led to ultimate misuse. To whom are they supplying the drugs? The retail seller or the ultimate user? Pharmacists, for example, are mentioned in the complaint, Your Honor. Who are not the ultimate users. Correct. So the causes of action brought by the State are based on their... I'm having a hard time getting a grasp on what the complaints would be. The complaint by the State... That you make drugs available to the public at large who abuse it? The complaint is that, according to the State again, that the pharmaceutical companies are shipping far more than they should be shipping to West Virginia, that they should have things in place pursuant to the regulations that apply to their business, and that, therefore, they have violated the Consumer Protection Act, the Controlled Substances Act, the statutes that are cited in the West Virginia complaint. The State itself, however, repeatedly and numerous times stated, we are not seeking damages on behalf of West Virginia citizens and their injury. We're seeking only... These citizens of West Virginia were injured, no? I mean, otherwise, if there was nobody injured, there would be no cost. Well, and, Your Honor, that gets to, for example, the MedMart and the Moments and the Chester Jensen cases that Cincinnati cited in its brief. There may be an example that demonstrates that the State has suffered loss. It may be that there were or could have been bodily injury, but that's not what the State is actually seeking. For example, in the MedMart case, the baby bottle manufacturer was alleged to have made a product that contained BPA, a hazardous chemical, which could injure people, and the claim was brought by purchasers of the bottle. The party seeking coverage in that case said, well, this is a claim because of bodily injury, because they're alleging that our products have caused bodily injury. But, in fact, the court said, no, no, that's tangential, as Your Honor remarked, tangential to what the claim actually is here. This claim is about the economic loss suffered by the claimants, which is they bought these bottles without the agency. But there was no bodily injury there, was there, in that case? You're right, and that's... And here there's allegations of lots and lots of bodily injury. But it's not what the damages are sought for here, Your Honor. And what are they sought for? For violations of statute, which allows the imposition of fines and penalties, for increased costs to law enforcement and judicial... But all those increased costs were, quote, because of bodily injury, no? That may be the symptom, Your Honor, but those are not what the costs are. But, see, the thing is the underlying complaint seeks various forms of relief, and you agree that only one of those forms of reliefs need to potentially fall within the policy to trigger duty to defend, right? That's correct. One of them. That's correct. So it doesn't matter if West Virginia seeks disgorgement of profits as long as it also seeks damages because of bodily injury. Agreed, and yet our position is that, in fact, it does not under any of the enumerated causes of action. For example, even in its nuisance medical monitoring and negligence claims, the state specifically stated they're aimed at holding the defendants accountable for causing the economic burden to the state's provision of health, law enforcement, and judicial services. And that's a specific statement from the state itself, the party seeking the relief, the damages. There couldn't be a better party to provide a position on what exactly the damages are that it seeks. It's the functional equivalent of an affidavit here from the plaintiff seeking damages against Cincinnati's insured. And that's really, and getting back to one of Your Honor's questions too, that's the economic loss that we're talking about here, the fines, the penalties for violation of the statutes. It's a regulated industry, heavily regulated industry. That's what the nature of the case is about. And that's, for example, why the underlying pharmacists and the doctors writing the prescriptions aren't involved. This is designed at the alleged violation. Now, you're not disputing that there were costs of medical care provided to people without insurance, those who abused the drugs, some of those who abused and then had an injury. Potentially, Your Honor, but that's not in the complaint. I think the issue is not what could have been sought by the state, but what is being sought by the state. And to the extent there was any need for interpretation, the state did so itself. And there's a ruling, the state is bound to its own representations by virtue of the ruling on the motion to remand. Specifically, there are no monetary damages sought in this action based on damages suffered by individual West Virginia citizens. That's a direct quote from the state of West Virginia to the court in the underlying case. Or for the care of. Right, or based on damages suffered by individual West Virginia citizens. There is no bodily injury. They do not seek that. And as specifically held by the court in that case, West Virginia v. Amerisource Bergen, quoting from the court, it is apparent the Attorney General is seeking recovery of damages for the state and not one or more of its individual citizens. And further, one strains to read the complaint here to reach individual claims for individual damages. And again, that's from the state of West Virginia. The district court ruling on the motion to remand, where the court agreed with the state, this is not an action on behalf of your citizens, and therefore the removal is inappropriate, and the case was sent back to the state court. So what they say in the complaint, and I'm looking at, I think it's a paragraph, when they're identifying the damages and losses, it's 6D, where they actually talk about 20% of the patients admitted through the trauma service who have an issue with narcotic usage, and many of the addicted patients have no medical insurance coverage. You don't think that's adequate enough? I think as in the Medmark and the Moments and the Chester Genshin cases, Your Honor, that may provide some factual context to show that there have been or there is a reason why someone is liable, but it doesn't quantify the actual damages that the state is seeking. And I think that's consistent with what the court said. No, I understand that the position of your client, that the plaintiffs in this case, that is the state, cannot prove the allegations of its complaint? No, Your Honor. They can't find the underlying people liable? That's not our position. That's more of a defense position. This incident isn't covered by the insurance at all? Based on the allegations and the damages sought by the state. You can't prove it, or it wouldn't be covered by the policy? It's not covered by the policy. And I'm closer to home than I was. If the court has any further questions, otherwise I think that's really the issue. Thank you. Thank you, Your Honor. How much time does she have? Five minutes? Ms. Lerman. So why don't you go right to the damages request? Right. Yeah. Well, I think you just need to look at paragraph 57 of the complaint, where they say defendants and their agents have caused the state to incur excessive costs related to diagnosis, treatment, and cure of addiction. And the state has borne the massive costs of those illnesses by having to provide necessary medical care, facilities and services for treatment of citizens who are unable to afford such services. And then in the prayer for damages, they want damages and losses sustained as an approximate result. That's for C? Yes, for C, but I think A and B would also apply. And if you go back and look at the allegations of nuisance and negligence repeatedly, they say, look, we spent money taking care of these folks. Maybe the complaint is not a very good one. Maybe it will get thrown out. But at the duty to defend stage, we need a defense, and we purchased insurance to supply us with a defense. And as long as even one of the allegations could turn out to require us to pay for people getting hurt because of what we did, then we have coverage. And I'm really at a loss to understand how the other side can say that the state isn't looking for damages because of bodily injury. I've looked very closely at the case they cite, and the court there did find this isn't a class action. The state isn't trying to get money back and give it to individuals. The state is trying to get money back that it spent on individuals. The state is the real party in interest, and there's no dispute there. But just because it's a state and not a mother or some other caregiver, we have cases in the environmental context where the government goes after folks for breaking pollution laws and violating regulations. And as an outboard Marine, I say, look, they can either say, look, you guys, clean up the mess, or they can say, we cleaned up the mess, here's the bill. Either way, CGL liability insurance covers it. Same thing in specialty coatings. So we have a lot of these cases in the environmental arena. We don't have a case that's on all fours with this one, except the two district court decisions that I suggest not be followed. So I really can't see how these allegations do not ask for money back to take care of these people. The state says, H.G. Smith and you others, you have to give us money because we spent all this money taking care of these people because of your negligence. Even if it were a fraudulent statement, Illinois law says you still have a duty to defend in that case. Even if it's a foolish sort of allegation or a losing allegation, it doesn't matter because we're still going to have to hire lawyers and there's going to be an expensive defense going on here. And that's what, at this stage of the game, all we're asking is duty to defend. At this stage of the game, we think that it's clear that they have a duty to defend us. Are there any further questions? Apparently not. Thank you. Thank you both counsel. We'll take the case under advisement.